<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MARK WALKER, | : | |
| Plaintiff, | : | Civil Action No. 12-1734 (PGS) |
| v. | : | |
| STATE OF NEW JERSEY et al., | : | |
| Defendants. | : | |
| MARK WALKER, | : | |
| Plaintiff, | : | Civil Action No. 12-1829 (PGS) |
| v. | : | |
| STATE OF NEW JERSEY et al., | : | **MEMORANDUM OPINION AND ORDER APPLIES TO BOTH ACTIONS** |
| Defendants. | : | |

It appearing that:

1. Initially, the Clerk received and docketed one civil Complaint executed by Plaintiff; that submission gave rise to <u>Walker v. New Jersey</u>, Civil Action No. 12-1734 (PGS) ("<u>Walker-I</u>"). The <u>Walker-I</u> Complaint named six persons/entities as Defendants, and it arrived accompanied by Plaintiff's <u>in forma pauperis</u> application and his motion for appointment of <u>pro bono</u> counsel. See <u>Walker-I</u>, Docket Entries Nos. 1, 1-2 and 2.

2. Shortly thereafter, the Clerk received and docketed another civil Complaint executed by Plaintiff; that submission gave rise to <u>Walker v. New Jersey</u>, Civil Action No. 12-1829

    (PGS) ("Walker-II"). The Walker-II Complaint named the same six persons/entities as Defendants and asserted the same challenges as in the Walker-I Complaint. See Walker-I, Docket Entry No. 1. The Walker-II Complaint also arrived accompanied by Plaintiff's in forma pauperis application. See Walker-II, Docket Entry No. 1-1.

3.     The Walker-II matter appears identical, in all substantive respects, of the Walker-I action.

> The power of a federal court to prevent duplicative litigation is intended "to foster judicial economy and the 'comprehensive disposition of litigation,'" Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (quoting Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)), and "to protect parties from 'the vexation of concurrent litigation over the same subject matter.'" Id. (quoting Adam v. Jacobs, 950 F.2d 89, 93 (2d Cir. 1991)).

Porter v. Nations Credit Consumer Disc. Co., 2003 Bankr. LEXIS 933, at *33 (Bankr. E.D. Pa. 2003). Therefore, the Walker-II matter will be terminated as duplicative of Walker-I. In light of Plaintiff's apparent interest in litigating his Walker-I action, and absence of three disqualifying strikes, this Court will grant Plaintiff in forma pauperis status for the purposes of Walker-I matter, while directing the Clerk not to assess another filing fee against Plaintiff in connection with Walker-II, regardless of Plaintiff's submission of another in forma pauperis application.

4.     It is long established that a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nonetheless, the Third Circuit has noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. See Burlington Coat Fact. Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).

Therefore, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. See Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d 551, 565 (D.N.J. 2001). Addressing the clarifications as to the litigant's pleading requirement stated by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the district courts with guidance as to what pleadings are sufficient to pass muster under Rule 8. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' . . . ." Twombly, 127 S. Ct. at 1964-65 . . ."[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3.

Id. at 230-34 (original brackets removed). This pleading standard was further refined by the United States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[, i.e., by] legal conclusion[s] couched as a

3

> factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [these] allegations . . . that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn [on] the discovery process. Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint asserts some wrongs] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope of developing actual facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

The Court of Appeals observed that Iqbal hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was applied to federal complaints before Twombly. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). Since Iqbal, the Court of Appeals has instructed district courts to conduct, with regard to Rule 8 allegations:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [See Iqbal, 129 S. Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in Iqbal.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled

---

[1] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

>   to relief.'"  Iqbal, [129 S. Ct. at 1949-50 (emphasis supplied)].  This
>   "plausibility" determination will be "a context-specific task that requires
>   the reviewing court to draw on its judicial experience and common sense."
>   Id.

Fowler, 578 F.3d at 210-11.

This Court, therefore, shall now screens Plaintiff's Walker-I allegations pursuant to this above-detailed pleading standard.  See 28 U.S.C. § 1915(e)(2).

5.  In his Walker-I Complaint, Plaintiff merely asserted, with regard to each named Defendant, that each Defendant "should have known or knew the[] violations [were] taking place."  Walker-I, Docket Entry No. 1, at 4-6.  Each such assertion was made without any elaboration as to how or whether any Defendant was personally involved in the events alleged; indeed, Plaintiff's resort to the generic "knew or should have known" language suggests that *no* Defendant was personally involved in the alleged wrongs.[2]  See id.  Plaintiff's statement with regard to exhaustion of administrative remedies provides this Court with an addition assertion, namely, that Plaintiff "wrote [to] the warden a letter expressing [his] innocence": that statement suggests Plaintiff's opinion that the warden might be liable to him by mere virtue of being the addressee of Plaintiff's letter.  See id. at 4.  Plaintiff's "Statement of Facts" section alleged that, on December 31, 2011, Plaintiff was charged with a disciplinary infraction and, initially, requested witnesses to be present at his disciplinary hearing but then waived his right to such hearing altogether (perhaps because the witnesses appeared unavailable, since the prison was on a "lock-

---

[2] In the body of his Walker-I complaint, Plaintiff named the warden, the deputy warden, a certain lieutenant, a certain captain and a certain law librarian as Defendants, adding the State of New Jersey as an additional Defendant in the caption of his Walker-I complaint.  See Walker-I, Docket Entry No. 1.

5

down"). See id. at 7. Plaintiff, however, alleged that he was not given a copy of the disciplinary report stating reasons for the administrative sanctions imposed upon him. In addition, and without any apparent relation to the above-detailed allegation, Plaintiff also asserted that, in February 2012, he was subjected to "excessive force" by unspecified officers when those officers tried to halt/break down an altercation between Plaintiff and another inmate (which altercation, seemingly, gave rise to another disciplinary sanction). See id. On the basis of these allegations, Plaintiff seeks expungement of his prison record of the aforesaid disciplinary infringements and, in addition, requests damages in the amount of $200,000. See id. at 8.

6. As stated, Plaintiff's allegations (with regard to the allegedly deficient disciplinary hearing which ensued from the December 2011 events) are facially deficient for a number of reasons. Specifically:

   a. Plaintiff's claims against the State are necessarily invalid. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984); Edelman v. Jordan, 415 U.S. 651 (1974). Accordingly, Plaintiff's claims against the State, being barred by the Eleventh Amendment, are subject to dismissal with prejudice.

   b. Moreover, Plaintiff's claims against state officials cannot be based merely on the fact of these persons holding certain positions, even if these were supervisory

positions: supervising officials cannot be held liable for actions of their subordinates unless the litigant asserts facts showing these supervisors' *personal* involvement in the alleged wrongs, see Iqbal, 129 S. Ct. 1937; Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993): claims against the supervisors are subject to dismissal if they are based solely on the respondeat superior theory. See Iqbal, 129 S.Ct. at 1948 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior"); Argueta v. United States Immigration & Customs Enforcement, 2011 U.S. App. LEXIS 11983 (3d Cir. June 14, 2011). Consequently, Plaintiff's claims against the warden, deputy warden, captain, lieutenant, etc., are subject to dismissal if the sole factual basis for these claims was the fact that these persons held supervisory positions. Simply put, in order to succeed on these claims, Plaintiff will have to assert the facts showing *each* named Defendant's *personal* involvement in the alleged wrongs.[3]

---

[3] To the extent Plaintiff tried to implicate the warden by asserting that he wrote a letter to the warden, Plaintiff's claims are deficient. "[T]he First Amendment does not impose any affirmative obligation on the government to listen, to respond or . . . to recognize [a grievance]." Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465 (1979); Minnesota State Bd. Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications"). "Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997). A failure to respond to/investigate an inmate's grievances " cannot violate his rights to due process and is not actionable." Stringer v. BOP, 145 F. App'x 751, 753 (3d Cir. 2005) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)).

c.     In addition, even if Plaintiff's allegations are not based on a particular Defendant's position, Plaintiff must assert the facts showing each Defendant's *personal involvement* in the alleged wrongs: the allegation that a defendant "knew or should have known about such wrong" are facially insufficient. See Fowler, 578 F.3d at 210-11; cf. Institutional Investors Grp. v. Avaya, Inc., 564 F.3d 242, 253 (3d Cir. 2009) (plaintiff must state his factual allegations in the fashion analogous to "the first paragraph of any newspaper story," in the sense that these allegations had to state the "who, what, when, where, and how" of the specific events at issue).

d.     Furthermore, the nature of Plaintiff's challenges based on the deficiencies of his disciplinary hearing suggests Plaintiff's confusion as to his rights and remedies available to him. The Due Process Clause of the Fourteenth Amendment provides that liberty interests of a constitutional dimension may not be rescinded without "certain" procedural protections. See U.S. Const. amend. XIV. In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court set forth the requirements of due process in prison disciplinary hearings. Under Wolff, an inmate is entitled to: (i) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (ii) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (iii) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 563-71.

However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. See id. at 556-57; see also Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). Here, Plaintiff concedes that his witnesses became unavailable due to prison lock-down, and – in addition – Plaintiff outright informed this Court that he *waived* his right to a hearing. Therefore, it appears that the only viable claim Plaintiff might have is the one asserting his disciplinary officer's failure to provide him with a written statement as to the evidence relied on and the reasons for the disciplinary sanctions imposed. However, with regard to such claim, Plaintiff cannot seek monetary damages: the remedy for a deficient disciplinary hearing is a curative disciplinary hearing conducted in accordance with the limited, above-detailed requirements of the Due Process Clause.

> [E]ven if a federal court determines that an inmate's due process rights were violated during an administrative hearing, . . . the proper remedy is a curative administrative hearing conducted in accordance with due process requirements (only if the administrative body expressly fails to comply with a judicial order directing new and procedurally correct hearing, such failure gives basis to the court's further intervention, e.g., by means of holding an in-court hearing or directing the administrative body to correct the prison term of the affected inmate). See, e.g., Mickens-Thomas v. Vaughn, 355 F.3d 294 (3d Cir. 2004); Toolasprashad v. Grondolsky, 570 F. Supp. 2d 610, 631 (D.N.J. 2008) ("The only remedy the court can give is to order the [administrative body] to correct the abuses or wrongful conduct within a fixed period of time") (quoting Billiterri v. United States Board of Parole, 541 F.2d 938, 943-44 (2d Cir. 1976), and citing Furnari v. United

9

> States Parole Comm'n, 531 F.3d 241 (3d Cir. 2008)); cf. Wilkinson v. Dotson, 544 U.S. 74 (2005) (pointing out that a procedurally proper curative administrative proceeding might yield a substantive determination identical to that reached as a result of a procedurally defective administrative proceeding); Howard v. United States Bureau of Prisons, 487 F.3d 808 (10th Cir. 2007) (remanding the case for further proceedings envisioning, inter alia, a curative administrative hearing).

Mitts v. Zickefoose, 2011 U.S. Dist. LEXIS 141588, at *10-11 (D.N.J. Dec. 5, 2011) (quoting a passage from Cannon v. Schultz, 2010 U.S. Dist. LEXIS 59468, at *16-17 (D.N.J. June 16, 2010).[4]

7. Therefore, Plaintiff's claims based on the disciplinary hearing (deriving from the events that took place in December 2011) will be dismissed. While such dismissal will be with prejudice as to Plaintiff's claims against the State and all Plaintiff's claims for damages, Plaintiff will be allowed an opportunity to replead his injunctive relief claims as to other

---

[4] The Court also cannot rule out the possibility that Plaintiff's related request for the remedy of expungement might be cognizable under dicta articulated in Williams v. Fed. Bureau of Prisons, 85 F. App'x 299 (3rd Cir. 2004). In Williams, the Court of Appeals observed:

We have never had to decide whether to endorse the right of expungement announced in Paine v. Baker, 595 F.2d 197 (4th Cir. 1979), and other Circuit Courts of Appeals have expressly questioned its precedential value. [See] Johnson v. Rodriguez, 110 F.3d 299, 308-09 n. 13 (5th Cir. 1997). . . . [In Williams] the Court of Appeals for the Fourth Circuit announced that, in limited circumstances, state prisoners have a federal due process right to have "prejudicial erroneous information expunged from their prison files." [Paine,] 595 F.2d at 202. The [Paine] court held: "In certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied upon to a constitutionally significant degree." Id. at 201. . . . Even if we assume arguendo that [the inmate] can assert a Paine v. Baker expungement claim . . . , it is nevertheless clear that he is not entitled to relief [of expungement of] his prison file [where the information on file is factually correct].

Williams, 85 F. App'x at 303.

      Defendants, provided that Plaintiff specifies how *each* Defendant named in Plaintiff's amended complaint was *personally* involved in the alleged failure to serve Plaintiff with a report as to the evidence relied upon and the reasons for his disciplinary sanctions.

8. Finally, Plaintiff's other line of challenges (based on the prison officers' alleged use of excessive force, which – according to the Complaint – took place in February 201,2 when Plaintiff was seemingly involved in an altercation with another inmate) could be raised only by means of a new and separate complaint; such complaint must be submitted in a new and separate action. Rule 20(a)(2) of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18(a) governs the joinder of claims. See Fed. R. Civ. P. 18(a), 20(a)(2). Rule 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) and (B). Rule 18 (a) provides : "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Wright & Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of

> the same transaction or occurrence and presents questions of law or fact common to all.

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil 3d §1655; see Neitzke v. Williams, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).   Thus, the plaintiff may not name more than one defendant in his original (or amended) complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact.  See Fed. R. Civ. P. 20(a)(2).  That rule applies with equal force to claims by prisoners and non-prisoners: as the United States Court of Appeals for the Seventh Circuit recently explained, a prisoner may not join in one case all defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g) . . .  A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.

George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007).

Here, it is self-evident, that neither the warden, nor the deputy warden, the prison librarian, etc., could have been the persons involved in the alleged usage of excessive

force, and Plaintiff's Complaint in <u>Walker-I</u> makes it clear that the alleged excessive force events (which took place in February 2012) and the alleged December 2011 events (that gave rise to the allegedly deficient disciplinary hearing) were entirely distinct and wholly unrelated transactions. Therefore, Plaintiff's excessive force challenges will be dismissed without prejudice: Plaintiff may, if he so wishes, raise these challenges by means of a new pleading filed in a new action.[5] To assist Plaintiff in that endeavor, the Court will direct the Clerk to serve Plaintiff with a blank civil complaint form, which – in the event Plaintiff elects to institute such new action – the Court urges Plaintiff to execute carefully and thoughtfully, detailing the facts of his claims and clarifying each named defendant's personal involvement in the wrongs alleged.

IT IS THEREFORE on this 28th day of August, 2012,

ORDERED that Plaintiff's application to proceed <u>in forma pauperis</u> in <u>Walker v. New Jersey</u>, Civil Action No. 12-1734 (PGS) is granted, and the Clerk shall file the Complaint in <u>Walker v. New Jersey</u>, Civil Action No. 12-1734 (PGS), without prepayment of the filing fee; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b), the Clerk shall serve this Memorandum Opinion and Order upon the Attorney General of the State of New Jersey and upon the Warden of Plaintiff's current place of confinement by regular mail and duplicate the same by electronic service upon the Attorney General of the State of New Jersey; and it is further

---

[5] No statement made in this Memorandum Opinion and Order shall be construes as expressing this Court's position as to validity or invalidity of Plaintiff's excessive force challenges, if asserted.

ORDERED that, in connection with <u>Walker v. New Jersey</u>, Civil Action No. 12-1734 (PGS), Plaintiff is assessed a filing fee of $350.00, which shall be deducted from his prison account pursuant to 28 U.S.C. § 1915(b)(2) in the manner set forth below, regardless of the outcome of the litigation; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(1)(A), Plaintiff is assessed an initial partial filing fee equal to 20% of the average monthly deposits to the Plaintiff's prison account for the six month period immediately preceding the filing of the Complaint; when funds exist, the New Jersey Department of Corrections shall deduct said initial fee from Plaintiff's prison account and forward it to the Clerk; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), until the $350.00 filing fee is paid, each subsequent month that the amount in Plaintiff's prison account exceeds $10.00, the New Jersey Department of Corrections shall assess, deduct from the Plaintiff's account, and forward to the Clerk payments equal to 20% of the preceding month's income credited to Plaintiff's prison account, with each payment referencing the docket number of this action; and it is further

ORDERED that Plaintiff's Complaint in <u>Walker v. New Jersey</u>, Civil Action No. 12-1734 (PGS), is dismissed for failure to comply with the requirements of Rules 8, 18 and 20. Such dismissal is with prejudice as to Plaintiff's claims against the State and, in addition, all his claims – regardless of the Defendant names – seeking monetary damages. Such dismissal is without prejudice as to Plaintiff's injunctive relief claims raised against individual Defendants, provided that these claims are based on his allegedly deficient administrative hearing. Such dismissal is also without prejudice as to Plaintiff's claims for damages, which are based on Plaintiff's excessive force allegations, provided that such challenges are raised by means of a

new and timely civil complaint submitted in a new and separate action, that is, if Plaintiff duly commences such action in the future; and it is further

ORDERED that Plaintiff's application for appointment of pro bono counsel, see Walker v. New Jersey, Civil Action No. 12-1734 (PGS), Docket Entry No. 2, is denied as facially premature. Such denial is without prejudice to renewal of the same in the event Plaintiff's amended complaint is, in fact, submitted in Walker v. New Jersey, Civil Action No. 12-1734 (PGS), and – in addition – the Court orders service of that amended complaint; and it is further

ORDERED the Clerk shall administratively terminate Walker v. New Jersey, Civil Action No. 12-1734 (PGS), by making a new and separate entry on the docket reading "CIVIL CASE TERMINATED"; and it is further

ORDERED that administrative termination of Walker v. New Jersey, Civil Action No. 12-1734 (PGS), is not a "dismissal" for purposes of the statute of limitations, and that if this § 1983 case is reopened pursuant to the terms of this Order, it is not thereby subject to the statute of limitations bar, provided the original Complaint was timely. See Houston v. Lack, 487 U.S. 266 (1988); McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996); Williams-Guice v. Board of Education, 45 F.3d 161, 163 (7th Cir. 1995); and it is further

ORDERED that Plaintiff may have Walker v. New Jersey, Civil Action No. 12-1734 (PGS), reopened if, within 30 days of the date of the entry of this Memorandum Opinion and Order, Plaintiff submits his amended complaint asserting Plaintiff's injunctive relief challenges based on the allegedly deficient administrative hearing that ensued from the December 2011 events. Such allegations must be stated in compliance with the guidance provided to Plaintiff herein; and it is further

ORDERED that the Clerk shall terminate Walker v. New Jersey, Civil Action No. 12-1829 (PGS), as duplicative; and it is finally

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon Plaintiff by regular U.S. mail, together with *two* blank civil rights complaint forms and a blank in forma pauperis application.[6]

                                                   *s/Peter G. Sheridan*
                                                   **Peter G. Sheridan, U.S.D.J.**

August 28, 2012

---

[6] Plaintiff may use one complaint form to execute his amended complaint in Walker v. New Jersey, Civil Action No. 12-1734 (PGS), while he may use the other complaint form (together with a new in forma pauperis application) in the event Plaintiff elects to commence a new and separate action for the purpose of asserting his excessive force challenges.